USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/26/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
JAIME EDMONDSON et al.,            :
                                   :
                       Plaintiffs, :
                                   :
            -against-              :   16-CV-2242 (VEC)
                                   :
                                   :   ORDER
RCI HOSPITALITY HOLDINGS, INC.,    :
PEREGRINE ENTERPRISES, INC., RCI   :
DINING SERVICES (37TH STREET), INC., and :
ERIC LANGAN,                       :
                                   :
                                   :
                       Defendants. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On March 30, 2020, the Court entered an Opinion and Order granting both parties' motions to exclude expert testimony. Dkt. 132. On April 27, 2020, the parties filed separate motions for reconsideration. Dkts. 137, 139. For the following reasons, the motions for reconsideration are DENIED.

## DISCUSSION

A party may obtain relief on a motion for reconsideration "only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation omitted). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

1

**A. Defendants' Motion to Exclude Martin Buncher and Stephen Chamberlin**

Plaintiffs argue that the Court improperly excluded the Martin Buncher Survey. The Court disagrees. Plaintiffs simply seek to renew the arguments raised in their opposition, all of which the Court has addressed and rejected. Opinion and Order, Dkt. 132 at 14-18. Specifically, Plaintiffs repeat their claim that the Buncher Survey was not a causal study and therefore did not require a control group. The Court previously addressed this argument, explaining that because the Survey aimed to analyze whether Defendants' advertisements *caused* consumer confusion, it is a causal study warranting a control group. Opinion and Order at 14-15.[1] Moreover, Plaintiffs failed to respond to the Court's criticism of Buncher's "control question." *Id.* The Court notes, however, that although Plaintiffs' survey evidence is excluded, Plaintiffs may still present evidence of confusion through anecdotal evidence. *See Toth v. 59 Murray Enterprises, Inc.*, No. 15-CV-8028, 2019 WL 95564 at *7 (S.D.N.Y. Jan. 3, 2019); *Disney Enterprises, Inc. v. Sarelli*, 322 F. Supp. 3d 413, 435 (S.D.N.Y. 2018); *LVL XIII Brands*, 209 F. Supp. 3d 612, 672 (S.D.N.Y. 2016).

Plaintiffs' argument that the Buncher Survey did not need to provide survey respondents with the opportunity to indicate uncertainty or an instruction not to guess is unavailing. *Toth*, 2019 WL 95564 at *8 (excluding a near-identical survey administered by Buncher due to flaws such as the failure to provide an opportunity to indicate lack of knowledge or an instruction not

---

[1]    Plaintiffs argue that Burcher was uninterested in learning whether Defendants' advertisements "caused" confusion. Instead, Plaintiffs argue that Burcher sought only to test whether the survey respondents were confused about whether the women featured in the ads sponsored or otherwise approved of the use of their pictures. Pls.' Mem. of Law, Dkt. 141 at 6. But that argument is sophistry as the respondents were shown unauthorized advertisements and then asked whether they believe the model depicted was associated with the advertiser. For example, the surveys presented the respondents with four images of Plaintiffs' and explicitly asked, *inter alia*, whether they believed the women shown had any "affiliation, connection, or association" with the club being advertised and whether they believed the women agreed to "sponsor, endorse, or promote" the club being advertised. See Dkt. 115, Ex. A-2. If the respondent indicated he believed the model was associated with the advertiser, he was confused. While Plaintiffs argue that Burcher did not care about causation but only confusion, in this case they are the same: any confusion was necessarily "caused" by the advertisements.

to guess); *Malletier*, 525 F. Supp. 2d at 596 ("consumer confusion surveys should be designed to discourage guessing").

Finally, Plaintiffs' claim that the terms "lifestyle" and "events" were not confusing or misleading to the survey respondents simply because the respondents had all patronized a strip club is similarly unpersuasive. Even if strip club patrons are more familiar with the "events" that occur in a strip club, the term "lifestyle" has multiple connotations and meanings. *See Toth*, 2019 WL 95564 at *9.

Plaintiffs also request that the Court reconsider the decision to exclude the testimony of Plaintiffs' damages expert Stephen Chamberlin. Plaintiffs argue that the Court erred in suggesting that Chamberlin "should have weighted each [Plaintiff's] historical contract equally." Pls.' Mem. of Law, Dkt. 141 at 9. The Court did not suggest that Chamberlin should weigh each model's prior contracts *equally*; the Court's chief criticism of Chamberlin's methodology was that he failed to consider or acknowledge Plaintiffs' prior contracts *at all* or to explain how he derived each Plaintiff's "working day rate." Opinion and Order at 18-21. Instead, Chamberlin appeared to rely on the most lucrative contract to calculate each Plaintiff's working day rate, with no explanation why that was appropriate. *Id.* at 19-20. Plaintiffs also do not respond to the Court's criticism that Chamberlin failed to account for the myriad obligations included within the highest-paying contracts upon which he relied. *Id.* at 20.

### B. Plaintiffs' Motion to Exclude the Testimony of Jeff Anderson

Defendants request that the Court reconsider the decision to exclude the testimony of Defendants' damages expert Jeff Anderson. Defendants' arguments similarly re-hash those presented in their original opposition, which the Court already found to be unpersuasive and meritless. Opinion and Order at 8-14. Specifically, as to Anderson's second method of

calculating damages, Defendants argue that the Court erred in characterizing Anderson's opinion as flawed simply because it relied "on only two prior contracts." Defs.' Mem. of Law, Dkt. 138 at 9 (citing Opinion and Order at 12). Instead, Defendants claim that "it was Anderson's analysis of all documentation on Plaintiffs' past earnings history that allowed him … to opine that Burciaga and Hinton's agreements with Crazy Horse III were the most comparable agreements." *Id*. at 16. The Court disagrees; Defendants themselves concede that these were the only two contracts that were produced. *Id*. at 9. The Court does not doubt that, "had other plaintiffs produced their contracts with gentlemen's clubs, Anderson would have also considered those contracts," *id*. at 9, but that fact does not automatically render the two contracts that were produced representative or reliable, particularly when there is a notable difference between the two: Burciaga's contract was for $3,500 and Hinton's contract was for $750. Opinion and Order at 12-13. In all events, relying on only two data points to derive a "representative range" of all fifty-two Plaintiffs' damages was unreasonable and yielded an unreliable result.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED. Defendants' motion for reconsideration is also DENIED. The Clerk of Court is respectfully directed to close the open motions at docket entries 137 and 139.

**SO ORDERED.**

Date:  **May 26, 2020**                           _____
      **New York, New York**                                     **VALERIE CAPRONI**
                                                                         **United States District Judge**